STATE ex rel. INDEPENDENT SCHOOL DISTRICT NO. 1 OF OKLAHOMA COUNTY, Oklahoma, a/k/a Putnam City Public Schools; Independent School District No. 4 of Oklahoma County, Oklahoma, a/k/a Choctaw/Nicoma Park Public Schools; Independent School District No. 6 of Oklahoma County, Oklahoma, a/k/a Deer Creek Public Schools; Independent School District No. 9 of Oklahoma County, Oklahoma, a/k/a Jones Public Schools; Independent School District No. 12 of Oklahoma County, Oklahoma, a/k/a Edmond Public Schools; Independent School District No. 37 of Oklahoma County, Oklahoma, a/k/a Millwood Public Schools; and Independent School District No. 53 of Oklahoma County, Oklahoma, a/k/a Crooked Oak Public Schools, Petitioners,

v.

Joe B. BARNES, in his official capacity as Treasurer of Oklahoma County, Oklahoma, and as a member of the Oklahoma County Budget Board; George C. Keyes, in his official capacity as Assessor of Oklahoma County, Oklahoma, and as a member of the Oklahoma County Budget Board; Jerry Dewoody, in his official capacity as Clerk of Oklahoma County, Oklahoma, and as a member of the Oklahoma County Budget Board; Howard K. Berry and Frank Burnes, in their official capacities as members of the Oklahoma County Equalization and Excise Board; Carmon C. Harris, in his official capacity as Judge of the District Court of Oklahoma County, Oklahoma; Robert E. Anderson, Robert L. Wadley and Don Kilpatrick, in their official capacities as members of the Oklahoma Tax Commission; the Oklahoma State Department of Education; Tom Petuskey, Court Clerk of Oklahoma County, Robert H. Macy, District Attorney of Oklahoma County, J.D. Sharp, Sheriff of Oklahoma County, Bob Clark, Superintendent of Schools of Oklahoma County, and Shirley Daniels, F.G. Buchanan and Fred Snyder, members of the Board of Commissioners of Oklahoma County, Oklahoma, all in their official capacities as members of the Oklahoma County Budget Board; Whig Syndicate, Inc., an Oklahoma corporation; and Susan Lamb Griffith, an individual, Respondents.

No. 70241.

Supreme Court of Oklahoma.

June 30, 1988.

William Patrick Bleakley, Larry Lewis, Linda Maria Meoli, Oklahoma City, for petitioners.

Frederick O'Laughlin, Oklahoma State Tax Com'n, Oklahoma City, for respondent Oklahoma Tax Com'n.

Marc S. Pate, Asst. Dist. Atty., Oklahoma City, for respondents Joe B. Barnes, George C. Keyes, Jerry Dewoody, Tom Petuskey, Robert H. Macy, J.D. Sharp, Bob Clark, Shirley Daniels, F.G. Buchanan and Fred Snyder.

Jeff Mixon, Atty. General's Office, Oklahoma City, for respondent State Dept. of Educ.

William S. Flanagan, Dist. Atty's Office, El Reno, for respondent Oklahoma County Excise and Equalization Bd.

Lee M. Holmes, Oklahoma City, for respondents Whig Syndicate, Inc. and Susan Lamb Griffith.

Ronald L. Day, Oklahoma City, for respondent Oklahoma City Public Schools.

Jack R. Durland, Oklahoma City, for respondent Carmon C. Harris.

HARGRAVE, Vice Chief Justice.

The petitioners, Independent School District No. 1 of Oklahoma County et al., bring an original action in this Court, seeking writs of mandamus and prohibition. The relief sought in this action is as follows:

Mandamus to compel the County Treasurer of Oklahoma County to distribute all 1987 ad valorem tax payments received from a protesting taxpayer save only that portion of each tax payment which is protested;

Prohibit the trial court from granting relief in a district court class action. The relief sought in that action is adjustment of ad valorem taxes to taxpayers who did not protest their taxes in a statutorily timely manner;

Prohibit the trial court in the same class action from ordering taxpayers to pay the county treasurer only the amount of taxes set by the valuation of the County Board of Equalization;

Prohibit the Board of Equalization from hearing further protests of 1987 taxes and continuing its session beyond the statutory deadline of the third Monday of September in any calendar year;

Mandamus to compel the Board of Equalization to proceed with hearing protests of 1988 ad valorem taxes and to do so before the statutory deadline of the third Monday in September, 1988;

Mandamus to compel the County Clerk to take custody and organize the records of the Board of Equalization and properly date stamp and process protests of 1988 taxes;

Prohibit the trial court from proceeding to determine Counts II and III of the class action suit pending resolution of the issues raised here;

Mandamus to compel the Department of Education to adjust the valuation of each school district by subtracting pending protests and granted protests before computing state aid.

Petitioner also seeks this Court's appointment of a special master from the Oklahoma Tax Commission to hear protests of 1987 ad valorem taxes and to deny those not timely-filed, as well as ancillary relief consistent with carrying out the duties as the special master.

Lastly the petitioner seeks a referee appointed to hear and determine the issues of Count I of the class action, while the trial court is prohibited from determining these issues.

This extensive prayer for relief stems from a factual scenario that begins in valuations of real property in Oklahoma County resulting from the January 1, 1987 deadline for compliance with mandatory revaluation

of property ordered by the legislature and the increase in minimum assessed value ratio mandated by the State Equalization Board. By statute, protest of ad valorem taxes must be made within twenty days of receipt of notice, or the first Monday in May. The last notice of increase was mailed April 27, 1987.

A month before the end of the Board of Equalization's 1987 term, the Board asked the District Attorney if they were required to hear protests filed after the statutory period of twenty days had expired. They were told they were not so required. Secondly, they asked if the Board could meet after the deadline, and were told they could. Consequently, the Board continued to hear not only the timely-filed protests, but also those filed late. Additionally, the Board continued to accept protests for seven months after the deadline, until December 16, 1987.

The County Assessor appealed four hundred ninety-three decisions of the Board of Equalization because the protests were not timely-filed. Two hundred forty-seven of these appeals have been dismissed, leaving one hundred eighty-nine appealed on that basis. Forty-seven of these cases challenged the Board's reduction in valuation. These cases were assigned to a District Judge, Carmon C. Harris, and are consolidated under Case No. CJ–87–10,748. On December 23, 1987 he ruled that all protests filed before December 16, 1987 could be heard and all funds paid by the protesting parties were to be considered paid under protest. Secondly, he ruled that all protestants need only pay the amount of the valuation set by the Board of Equalization.

On December 31, 1987 a class action suit was filed in the Oklahoma County District Court, praying for the return of all valuations to the old valuations of the previous year (1986), and the refund of all taxes paid over that amount.

In the meantime, the County Treasurer has been depositing all taxes paid by protesting individuals in a protest fund. This includes that portion of these taxpayers' taxes protested in addition to the portions

of their taxes not protested. Consequently, the unprotested portions of these taxpayers' remittances is not currently being distributed.

In distributing state funds to schools, the State Department of Education has been using two formulas using assessed valuation of the district's property as a factor. The result is that the higher the district's assessed valuation, the lower the state aid becomes. The Department of Education is refusing to adjust net valuation by subtracting protested funds until the protest is favorable to the taxpayer. This state aid is currently apportioned on the basis that the protests will be unsuccessful. The net result is that state aid has been decreased and ad valorem tax funds are being held in suspense, not distributed, both to the detriment of the local schools.

■ Under the record presented in this original action the assumption of jurisdiction is warranted. A writ of mandamus may be issued where there is a clear legal right vested in the petitioner and refusal to perform a plain legal duty not involving the exercise of discretion in a situation in which the writ, and no other relief, would be adequate. *Draper v. State*, 621 P.2d 1142 (Okl.1980). Mandamus has been utilized in prior proceedings where a school district alleges that failure to follow statutory rules providing for ad valorem taxation resulted in adverse consequences for petitioners. *State ex rel. Tulsa Classroom Teacher's Association, Inc. v. Board of Equalization, Tulsa County*, 600 P.2d 861 (Okl.1979), affirmed the fact that a school district has a direct and pecuniary interest in protecting the revenues used to support it so as to have standing to bring such an action. *Independent School District No. 9 of Tulsa County v. Glass*, 639 P.2d 1233 (Okl.1982).

Initially the petitioner, Independent School District No. 1 of Oklahoma County, requests a writ of mandamus to compel the County Treasurer to distribute the unprotested portions of tax payments made by protesting taxpayers.

■ The manner and method of distributing ad valorem payments is provided in 68 O.S.Supp.1987 § 2467(b) and (c). As applicable here the statute provides:

"(b) When such taxes are paid, the persons paying the same shall give notice to the county treasurer that an appeal involving such taxes has been taken and is pending, and that a specified portion of the tax amount is being paid under protest. The taxpayer shall attach to such notice a copy of the petition filed in the court in which the appeal was taken. It shall be the duty of such treasurer to hold such taxes so paid under protest separate and apart from other taxes collected by him. Any portion of such taxes not paid under protest shall be apportioned as provided by law.

\*   \*   \*   \*   \*   \*

(c) If an appeal is upon a question of valuation of the property, then the amount paid under protest by reason of the question of valuation being appealed shall be limited to the amount of taxes assessed against the property for the year in question less the amount of taxes which would be payable by the taxpayer for that year if the valuation of the property asserted by the taxpayer in the appeal were determined by the court to be correct."

The language of the 1987 amendment of the statute clearly provides that where valuation is at issue, the amount of the tax deemed protested is that portion of the current year's tax which is over the amount of the prior year's tax. The prior subsection directs and commands that taxes not paid under protest shall be apportioned as provided by law.

As applicable to the facts at hand, the mandate of the statute could not be clearer. First, the amount of tax which is deemed protested is the increase of the current year over the past year's taxes. Second, all tax not protested shall be apportioned out as provided by law. "Shall" is uniformly interpreted to be a mandatory command and is given a compulsory meaning. *Smith ex rel. State v. State Board of Equalization,* 630 P.2d 1264 (Okl.1981).

The term "shall" is a word of command or mandate. It denotes exclusion of discretion and signifies an enforceable duty, especially when addressed to public officials. *Davis v. Davis,* 708 P.2d 1102 (Okl.1985), *Oklahoma Alcoholic Beverage Control Board v. Moss,* 509 P.2d 666 (Okl.1973), and *State ex rel. Ogden v. Hunt,* 286 P.2d 1088 (Okl.1955).

There is no answer to this argument presented by the petitioners in the briefs of either Whig Syndicate, Inc., and Susan Lamb Griffith, the response of Oklahoma County, the response of the Oklahoma County Board of Equalization, the Oklahoma State Department of Education or the Oklahoma Tax Commission.

When the language of a statute is plain and unambiguous there is no room for construction. *Oldham v. Drummond Board of Education of Independent School District No. I-85,* 542 P.2d 1309 (Okl.1975).

In the cause now before this Court, there is a clear legal duty placed upon the County Treasurer to distribute unprotested portions of the county's tax collected. The statute clearly specifies what portions of the tax are to be deemed protested. The command of the statute is mandatory and contains no discretionary elements. It can only be concluded that the petitioner has stated to this Court a sufficient and valid basis upon which this Court should issue a writ of mandamus commanding the County Treasurer to comply with 68 O.S.Supp.1987 § 2467(b) and (c), by apportioning the unprotested portions of tax receipts to the entities entitled thereto. In accord with, and in furtherance of this writ of mandamus issued to the County Treasurer, the District Court of Oklahoma County is prohibited from enforcing any order in Cause No. CJ-87-10,748 which requires the County Treasurer to deviate from the course of action outlined in this writ.

The remaining issues presented for resolution in this cause, Docket No. 70,241, are reserved for further consideration.

The filing of a petition for rehearing herein shall not delay the effectiveness of this order.

ORIGINAL JURISDICTION ASSUMED FOR THE PURPOSE OF ISSUING WRITS OF MANDAMUS AND PROHIBITION. WRIT OF MANDAMUS GRANTED, WRIT OF PROHIBITION GRANTED.

DOOLIN, C.J., and HODGES, LAVENDER, SIMMS and SUMMERS, JJ., concur.

OPALA and KAUGER, JJ., disqualified.